IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JORGE ELIECER GONZALEZ OCHOA,<br><br>Petitioner,<br><br>vs.<br><br>MATT MCCLEARY, Jail Administrator, Muscatine County Jail; DAVID EASTERWOOD, Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; and PAMELA BONDI, United States Attorney General, in their official capacities,<br><br>Respondents. | **3:25-cv-00139-SHL-WPK**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Jorge Eliecer Gonzalez Ochoa seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") officials. (Habeas Dkt.[1] ECF 1.) Gonzalez Ochoa is also facing separate criminal charges, but this Court has already ruled that there are conditions of release that would reasonably assure his appearance at all required hearings and ensure the safety of the community. (Crim. Dkt.[2] ECF 39.) Gonzalez Ochoa's petition for writ of habeas corpus raises four issues: (i) whether ICE had a lawful basis to detain him at the time of his release from custody in the criminal case at 10:00 a.m. on December 23, 2025; (ii) whether ICE has a lawful basis to detain him now; (iii) whether, if he is lawfully detained, he is nonetheless entitled to an individualized bond hearing in the Immigration Court; and (iv) whether and to what extent the Immigration Court is bound by this Court's ruling as to detention versus bond.

For reasons explained below, the Court concludes that ICE did not have lawful authority to detain Gonzalez Ochoa at 10:00 a.m. on December 23, 2025, and thus violated his rights by doing so. At this point, however, ICE has "cured" the initial problem such that Gonzalez Ochoa is

---

[1] All references to "Habeas Dkt." are to the Electronic Case Filing docket in this case, Case No. 3:25-cv-00139.
[2] All references to "Crim. Dkt." are to the Electronic Case Filing docket in the related criminal case, *United States v. Jorge Eliecer Gonzalez-Ochoa*, Case No. 3:25-cr-00080 (S.D. Iowa).

now lawfully in custody. The Court will not order his immediate release from custody, but rather concludes that he is entitled to an individualized bond hearing in the Immigration Court within seven days. During that hearing, the Immigration Judge may give weight to, but is not bound by, this Court's conclusion that there are conditions of release that would reasonably assure the safety of the community and Gonzalez Ochoa's appearance as required. The Petition for Writ of Habeas Corpus (Habeas Dkt. ECF 1) is therefore GRANTED IN PART and DENIED IN PART.

## I.    FACTUAL BACKGROUND.

Gonzalez Ochoa is a native of Colombia who alleges that he fled to the United States to escape threats to his and his family's lives after he refused to comply with targeted extortion attempts. (Id., ¶ 13.) He was placed into removal proceedings in late October 2024, at first on an expedited basis. (Habeas Dkt. ECF 9-1, ¶ 15.) On November 7, 2024, an Immigration Judge sustained the decision of an officer with U.S. Citizen and Immigration Services ("USCIS") that Gonzalez Ochoa did not have a credible fear of persecution in his native country. (Id., ¶¶ 16–17.) On November 14, 2024, ICE decided to issue a Notice to Appear pursuant to Section 240 of the Immigration and Nationality Act ("INA"). (Habeas Dkt. ECF 1-4, p. 5.) As a result, Gonzalez Ochoa was "no longer in the expedited removal process." (Id.)

ICE issued the Notice to Appear on November 15, 2024. (Id., p. 3.) The Notice to Appear stated that the expedited removal order (i.e., the "Section 235(b)(1) order") was "vacated" pursuant to 8 C.F.R. § 208.30. (Id., p. 2.) The Notice to Appear identified Gonzalez Ochoa as "an alien present in the United States who has not been admitted or paroled." (Id.) The Notice to Appear did not designate him as an "arriving alien" even though there is a box available for such a designation. (Id.) The Notice to Appear stated that Gonzalez Ochoa was subject to removal pursuant to Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the INA.[3] (Id.) ICE released Gonzalez Ochoa the same day on his own recognizance and subject to conditions. (Habeas Dkt. ECF 1-5, p. 2.) Following his release, Gonzalez reported to ICE on both occasions he was required to do so, once on December 17, 2024, and again on April 7, 2025. (Id., p. 3.)

On September 25, 2025, Gonzalez Ochoa was apprehended by ICE agents in Iowa City, Iowa, as part of a "targeted enforcement." (Habeas Dkt. ECF 1, ¶ 24; Habeas Dkt. ECF 9-1, ¶ 21.) On September 30, 2025, the Department of Homeland Security ("DHS") filed a motion to dismiss

---

[3] These sections are codified at 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and (a)(6)(A)(i), respectively.

the removal proceeding. (Habeas Dkt. ECF 9-1, ¶ 22.) On October 24, 2025, an Immigration Judge granted the motion to dismiss. (Habeas Dkt. ECF 1-8, pp. 2–3.)

In the meantime, on October 9, 2025, a grand jury in the Southern District of Iowa returned a three-count Indictment charging Gonzalez Ochoa with Fraud and Misuse of Documents (Count 1), Use of Immigration Identification Documents Not Lawfully Issued (Count 2), and False Representation of Social Security Number (Count 3). (Crim. Dkt. ECF 2.) He was temporarily detained pending further proceedings in the criminal case. (Crim. Dkt. ECF 14.) An Immigration Detainer was lodged on October 11, 2025. (Habeas Dkt. ECF 9-3, p. 1.)

On December 3, 2025, after further proceedings in the criminal case, Chief United States Magistrate Judge Stephen B. Jackson, Jr., ordered Gonzalez Ochoa to be released on conditions of supervision in accordance with 18 U.S.C. § 3142(c). (Crim. Dkt. ECF 24; Crim. Dkt. ECF 25.) Chief Judge Jackson ordered Gonzalez Ochoa to be released at 10:00 a.m. on December 8, 2025 (Crim. Dkt. ECF 24, p. 11), but stayed the ruling pending Government appeal (Crim. Dkt. ECF 29). On appeal, the undersigned affirmed Chief Judge Jackson's ruling via Order dated December 22, 2025. (Crim. Dkt. ECF 39.) The Court ordered Gonzalez Ochoa released on conditions of supervision at 10:00 a.m. on December 23, 2025. (Id., p. 4.)

Gonzalez Ochoa alleges that just before his release at 10:00 a.m. on December 23, 2025, Muscatine County Jail officials noticed that there was no active ICE detainer for him. (Habeas Dkt. ECF 1, ¶ 29.) According to Gonzalez Ochoa, ICE sent an arrest warrant and order to detain to Muscatine County Jail minutes before he was set to be released. (Id.) Gonzalez Ochoa alleges that the arrest paperwork included an arrest warrant and notice to detain, but no Notice to Appear. (Id., ¶ 30.) Gonzalez Ochoa interprets this to mean that ICE had not reopened removal proceedings against him at the time it provided the arrest warrant and notice to detain to the Muscatine County Jail. (Id., ¶¶ 76–77.) To that end, Gonzalez Ochoa notes that a search of the Executive Office of Immigration Review's Automated Case Information portal on December 23, 2025, shows no active case for his alien number. (Id., ¶ 38.) Gonzalez Ochoa therefore asserts that there is no statutory basis for DHS or ICE to have continued to detain him on December 23, 2025. (Id., ¶ 77.)

The Federal Respondents[4] do not materially dispute the timeline of events on December 23, 2025, although they disagree with Gonzalez Ochoa's legal conclusions. According to a

---

[4] The "Federal Respondents" are David Easterwood, Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, U.S. Immigration and Customs Enforcement; Todd M. Lyons, Acting Director, U.S.

Declaration from Deportation Officer Ashley Bates, ICE transmitted a Form I-200 (Warrant for Arrest of Alien) and Form I-203 (Order to Detain Alien) to the Muscatine County Jail at 9:59 a.m. that day. (Habeas Dkt. ECF 9-1, ¶ 25.) Bates says a new Notice to Appear was issued for Gonzalez Ochoa the same day, although her Declaration does not specify when. (Id., ¶ 26.) It is undisputed that ICE agents did not personally serve the Notice to Appear on Gonzalez Ochoa on December 23, 2025, even though he was in ICE custody. (Habeas Dkt. ECF 9-2, p. 4.) Instead, the new Notice to Appear "was issued via regular mail." (Id.) Gonzalez Ochoa remains in ICE custody and is scheduled to have an immigration hearing on February 5, 2026. (Habeas Dkt. ECF 9-1, ¶¶ 27–28.)

At a hearing on the petition for writ of habeas corpus, an Assistant United States Attorney informed the Court that the Notice to Appear was issued sometime after 10:00 a.m. on December 23, 2025. The Federal Respondents argue that they had the authority to detain Gonzalez Ochoa even without a Notice to Appear because: (a) in ICE's view, the dismissal of Gonzalez Ochoa's non-expedited removal proceeding automatically resulted in the reinstatement of his expedited removal case; and (b) as long as ICE has probable cause to believe a person is in the country illegally, agents may detain that person for as long as forty-eight hours before a Notice to Appear is issued.

## II.    LEGAL STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

## III.    LEGAL ANALYSIS.

### A.    The Court Has Jurisdiction to Review Gonzalez Ochoa's Petition.

As a threshold matter, the Court has jurisdiction to hear Gonzalez Ochoa's claims. Section 1252(g) states, subject to certain exceptions, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General

---

Immigration and Customs Enforcement; Kristi Noem, Secretary of Homeland Security; and Pamela Bondi, United States Attorney General, all of whom are sued solely in their official capacities.

to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This jurisdiction-stripping provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision." *Id.* Similarly, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Courts have repeatedly concluded that sections 1252(g) and (b)(9) do not preclude the Court from weighing in on active deportation cases, at least for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process. *See, e.g.*, *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *3–4 (E.D. Va. Sept. 19, 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–47 (D. Minn. 2025); *Aditya W.H.*, 782 F. Supp. 3d 691 at 703–06. This Court itself has reached the same conclusion. *See Barrajas v. Noem*, No. 4:25-cv-00322-SHL-HCA, 2025 WL 2717650, at *2–3 (S.D. Iowa Sept. 23, 2025); *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *2–3 (S.D. Iowa Sept. 30, 2025); *Enriquez Reyes v. Noem*, No. 3:25-cv-00114, ECF No. 14 (S.D. Iowa Nov. 3, 2025); *Uribe Gonzalez v. McCleary*, No. 3:25-cv-00137, ECF No. 8 (S.D. Iowa Dec. 23, 2025). The Court stands by its prior analysis, which revolves around two things.

First, the United States Supreme Court has interpreted the jurisdiction-stripping provision of § 1252(g) narrowly to cover only the three "discrete acts" of commencing proceedings, adjudicating cases, and executing removal orders. *See Maldonado*, 795 F. Supp. 3d at 1144–45 (discussing *Jennings v. Rodriguez*, 583 U.S. 281 (2018) and *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)). A request for a bond hearing is not one of those three acts, but rather is "independent of, and collateral to, the removal process." *Hasan*, 2025 WL 2682255, at *4 (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

Second, and similarly, the Supreme Court has squarely held that § 1252(b)(9) does not deprive federal courts of jurisdiction over cases challenging whether or when bond hearings are required in removal proceedings. *See Jennings*, 583 U.S. at 292–95; *see also Nielsen v. Preap*, 586

U.S. 392, 402 (2019) (holding that § 1252(b)(9) did not prohibit judicial review of claims against federal officials for detaining aliens without bond). Holding otherwise would run the risk of "mak[ing] claims of prolonged detention [in removal proceedings] effectively unreviewable." *Jennings*, 583 U.S. at 293.

The Court further concludes that Gonzalez Ochoa was not required to first exhaust administrative remedies before proceeding with his habeas petition. Absent a writ of habeas corpus, Gonzalez Ochoa's only avenue for relief would be asking an Immigration Judge to release him on bond. The Board of Immigration Appeals recently held, however, that aliens like Gonzalez Ochoa who are in removal proceedings are subject to mandatory detention under § 1225 irrespective of the proper interpretation of § 1226(c)(1)(E)(ii). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (Sept. 5, 2025). As far as the undersigned can tell, Immigration Judges have consistently cited *Matter of Yajure Hurtado* to conclude they lack jurisdiction to release someone on bond, notwithstanding dozens (if not hundreds) of rulings from Article III Judges across the country holding that *Matter of Yajure Hurtado* is incorrectly decided. There is no reason in these circumstances to force Gonzalez Ochoa to ask an Immigration Judge to release him on bond, as such a request would be futile.  Exhaustion is not required in these circumstances. *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778–79 (E.D. Mich. 2025) (declining to require exhaustion in similar circumstances).

For these reasons, the Court has jurisdiction over Gonzalez Ochoa's claims.

> B.  *ICE Did Not Have Lawful Authority to Detain Gonzalez Ochoa as of 10:00 a.m. on December 23, 2025.*

On the merits, the first question is whether ICE had lawful authority to detain Gonzalez Ochoa at 10:00 a.m. on December 23, 2025. It is undisputed that ICE had an arrest warrant and order to detain as of that time, but that a Notice to Appear was not issued until some unspecified time later in the day.

In the circumstances presented here, the Court is unaware of any lawful authority for ICE to have detained Gonzalez Ochoa in the absence of a Notice to Appear. As a starting point, there was no pending removal proceeding against him as of 10:00 a.m. because DHS had successfully moved to dismiss the prior removal action and a new removal proceeding cannot be initiated without a Notice to Appear. *See* 8 U.S.C. § 1229(a)(1) (stating that a notice to appear "shall" be given to the alien as part of the initiation of a new removal proceeding). In the words of the Supreme Court, the Notice to Appear "serves as the basis for commencing a grave legal

proceeding" and is akin to an indictment in a criminal case. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("In the ordinary course, if the Department of Homeland Security (DHS) discovers that an alien is living in the United States without an authorization, it may initiate removal proceedings against the alien by sending him a 'notice to appear.'" (internal footnote omitted)).

In arguing otherwise, the Federal Respondents claim the prior expedited removal proceeding against Gonzalez Ochoa was automatically "reinstated" when the non-expedited removal proceeding was dismissed in October 2025. They do not, however, provide any meaningful authority to support this argument. Instead, the only information in the record weighs squarely against their position. The Notice to Appear dated November 15, 2024—which initiated Gonzalez Ochoa's earlier, non-expedited removal action—states that the expedited removal case was "vacated" pursuant to 8 C.F.R. § 208.30. The word "vacate" means "[t]o nullify or cancel; make void; invalidate." VACATE, Black's Law Dictionary (12th ed. 2024). There is nothing in this definition—or the November 2024 Notice to Appear or October 2025 Order dismissing the non-expedited case—to suggest the original expedited removal proceeding suddenly sprung back into existence. Indeed, ICE itself all but confirmed that the expedited removal proceeding did not exist when it chose to issue a new Notice to Appear on December 23, 2025. If ICE truly believed the expedited action had been reinstated, the new Notice to Appear would have been unnecessary.

With no pending or newly initiated removal proceeding, ICE had no basis as of 10:00 a.m. on December 23, 2025, to issue the arrest warrant or order to detain Gonzalez Ochoa. Warrants in removal proceedings are issued pursuant to 8 C.F.R. § 236.1(b)(1), which states, in relevant part (with emphasis added): "**At the time of issuance of the notice to appear**, **or at any time thereafter** and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." The temporal aspects of this language are clear: an arrest warrant may be issued "[a]t the time of issuance" of the Notice to Appear or "thereafter." Not "before." Yet ICE issued an arrest warrant for Gonzalez Ochoa before the Notice to Appear here.

Granted, section 236.1(b)(1) is likely satisfied if the Notice to Appear is issued contemporaneous with the arrest warrant, even if the latter momentarily precedes the former. This is not, however, what happened here. 8 U.S.C. § 1229(a)(1) requires the Notice of Removal to be "given in person to the alien" unless personal service is "not practicable," in which case "service

by mail to the alien or the alien's counsel of record" is permissible. Here, ICE did not serve the Notice to Appear on Gonzalez Ochoa in person despite having provided personal service of the arrest warrant and order to detain. The only logical explanation is that the Notice to Appear did not yet exist. ICE instead created the Notice to Appear later in the day, then took the indefensible step of serving it via regular mail even though: (a) personal service is required by statute unless impracticable, and (b) personal service was not impracticable given that Gonzalez Ochoa was still in custody and easily could have been served in person. In context, it appears that ICE served the Notice to Appear by regular mail to obfuscate the timing of events and suggest that it might have been issued at the same time as the arrest warrant and order to detain. In other words, ICE *knew* it should not have issued the arrest warrant and order to detain in the absence of a Notice to Appear but sought to "cover its tracks." This is unacceptable. With no pending removal proceeding, and no Notice to Appear, ICE was required to allow Gonzalez Ochoa to be released at 10:00 a.m., period—not to arrest him and then scramble around later to backfill crucial missing documents in a misleading way.

The Federal Respondents argue, in the alternative, that they had forty-eight hours to issue the Notice to Appear after arresting Gonzalez Ochoa on December 23, 2025. Again, they cite no authority for this proposition. There is, to be sure, language in standard ICE detainers requiring *other agencies* to hold aliens in custody for up to forty-eight additional hours after the aliens otherwise would be released. (Habeas Dkt. ECF 9-3, p. 1.). This is premised, however, on there being an active removal proceeding, which was not the case here. Thus, the Court is not aware of any lawful authority for either ICE or local jail officials to hold Gonzalez Ochoa for a single minute past 10:00 a.m. on December 23, 2025. By having him detained anyway, ICE violated federal law and this Court's Order dated December 22, 2025, requiring him to be released. Again: this is unacceptable.

### C. Although ICE Belatedly Obtained Lawful Authority to Detain Gonzalez Ochoa, He Is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226.

Notwithstanding the state of events at 10:00 a.m. on December 23, 2025, ICE eventually commenced a new removal proceeding and thus has the authority to detain Gonzalez Ochoa in connection therewith. *See* 8 C.F.R. § 236.1(b)(1). Gonzalez Ochoa nonetheless argues that he should be released from custody immediately because this Court has already concluded under the Bail Reform Act ("BRA"), 18 U.S.C. § 3142 *et seq.*, that there are conditions of release that would reasonably assure his appearance as required and the safety of the community. In other words,

Gonzalez Ochoa argues that there is no reason to allow an Immigration Judge to independently evaluate the issue of detention versus bail.

The Court disagrees. The Eighth Circuit has recognized in a related context that "[t]he BRA and INA co-exist." *United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020). "The BRA regulates a judicial officer's pretrial release of federal criminal defendants. The INA governs the Attorney General's removal of aliens." *Id.* "Further, the BRA does not have any clearly expressed intention to subordinate the INA." *Id.*; *see also United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019) ("The BRA and the INA thus serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention."). Accordingly, the Government's failure to satisfy its burden of proving that detention is appropriate under the BRA does not per se mean that an Immigration Judge cannot conclude otherwise under the INA. *See Pacheco-Poo*, 952 F.3d at 952 ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974))). At most, the Court presumes that an Immigration Judge will consider the BRA ruling as a relevant-but-not-dispositive factor in the Immigration Judge's own exercise of discretion, much as this Court might treat the ruling of a different tribunal as persuasive—but not binding—authority.

Granted, Gonzalez Ochoa correctly points out that some district judges have taken the step of ordering outright release of aliens in removal proceedings. This Court, however, continues to believe it is the "better exercise of discretion . . . to order a bond hearing [in the Immigration Court] rather than assume for itself the role of 'Immigration Judge' by deciding bond or detention in the first instance." *Helbrum*, 2025 WL 2840273, at *7. To that end, according to status reports filed in other cases where this Court granted habeas petitions, Immigration Judges have indeed been willing to grant bond in appropriate circumstances when given the discretion to do so. *See, e.g.*, *Santiago Helbrum v. Williams et al.*, No. 4:25-cv-00349, at ECF Dkt. No. 23 (S.D. Iowa Dec. 18, 2025); *Enriquez Reyes v.Noem*, No. 3:25-cv-00114, at ECF Dkt. No. 16 (S.D. Iowa Dec. 15, 2025).

This leads to the question of whether an Immigration Judge will have discretion to do so in the circumstances presented here. The Government has consistently taken the position in recent months that aliens like Gonzalez Ochoa are subject to mandatory detention as "applicants for admission" under 8 U.S.C. § 1225, rather than being entitled to a bond hearing under 8 U.S.C. §

1226. The Federal Respondents clearly intend to pursue the same approach here, arguing that it is especially appropriate to treat Gonzalez Ochoa as an "applicant for admission" given that he was originally encountered at the border and placed into expedited removal proceedings. (Habeas Dkt. ECF 9, p. 5.)

The problem for the Federal Respondents is that federal officials vacated the expedited removal proceedings by issuing the Notice to Appear on November 15, 2024. (Habeas Dkt. ECF 1-4, p. 2.) This Notice to Appear identified Gonzalez Ochoa as an "alien present in the United States" rather than an "arriving alien" even though there was a box available for the latter designation. (Id.) Immigration officials then released Gonzalez Ochoa on his own recognizance and subject to conditions "in accordance with section 236 of the Immigration and Nationality Act." (Habeas Dkt. ECF 1-5, p. 2.) This is a reference to § 1226. The Federal Respondents cannot change course now by treating him as being governed by § 1225 after all. *See Helbrum*, 2025 WL 2840273, at *4 (holding that habeas petitioner was not subject to mandatory detention under § 1225 when federal officials had earlier treated him as being governed by § 1226(a)); *Hasan*, 2025 WL 2682255, at *7 (same); *Campos Leon v. Forestal*, No. 1:25-cv-01774, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) (same), *appeal docketed*, No. 25-3121 (7th Cir. Nov. 24, 2025).

Moreover, and more generally, the Court continues to disagree with the Federal Respondents position that an alien like Gonzalez Ochoa is an "applicant for admission" under § 1225 merely by virtue of being "in the country without legal status." *Barrajas*, 2025 WL 2717650, at *4; *Hasan*, 2025 WL 2682255, at *5–9; *Romero v Hyde*, 795 F. Supp. 3d 271, 281–88 (D. Mass. 2025). Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 2025 WL 2682255, at *8. If this is what Congress intended, it does not make sense that it would have enacted a separate statute as part of the same overall scheme that specifically contemplates bond hearings except in enumerated situations. *See id.* Indeed, it is especially difficult to square the Federal Respondents' interpretation of § 1225 with Congress's decision earlier this year to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See id.*; *Romero*, 795 F. Supp. 3d at 286. Under the Federal Respondents' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless. This is not how statutes are to be interpreted. "One of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,'

and 'no part will be inoperative or superfluous, void or insignificant.'" *Hasan*, 2025 WL 2682255, at *8 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

The strength of Gonzalez Ochoa's position on this issue is illustrated by the fact that most district courts have rejected the Government's position. *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4; *Hasan*, 2025 WL 2682255, at *5–9; *Maldonado*, 795 F. Supp. 3d at 1150–53; *Romero*, 795 F. Supp. 3d at 281–88. At most, the Federal Respondents cite two cases that have come out differently. *See Vargas Lopez v. Trump*, --- F. Supp. 3d ----, 2025 WL 2780351, at *7–10 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, --- F. Supp. 3d ----, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025). The weight of authority, however, remains strongly on Gonzalez Ochoa's side. *See Barrajas*, 2025 WL 2717650, at *4 ("The overwhelming majority of these courts have concluded that aliens in Petitioner's situation are governed by § 1226(a) and therefore entitled to bond hearings."). This Court will continue to follow the weight of authority and therefore concludes that Gonzalez Ochoa's case is governed by § 1226(a), not § 1225.

The bottom line is that the Court will not order Gonzalez Ochoa to be immediately released. It will, however, order that he is entitled to an individualized bond hearing in accordance with 8 U.S.C. § 1226(a).

## IV.   CONCLUSION.

The Court GRANTS IN PART and DENIES IN PART Gonzalez Ochoa's Petition for Writ of Habeas Corpus. (Habeas Dkt. ECF 1.) The Federal Respondents shall provide Petitioner with a bond hearing before an Immigration Judge within seven calendar days of this Order. The bond hearing must be conducted pursuant to 8 U.S.C. § 1226(a), not §§ 1225 or 1226(c); which is to say, the Immigration Judge may not deny bond on the basis that detention is mandatory. Instead, an individualized assessment must be made. Because this Court is not ordering Gonzalez Ochoa to be released, the Defendant Matt McCleary is not obligated to take any action beyond whatever he ordinarily would do to cooperate with federal officials to ensure Gonzalez Ochoa's appearance at the bond hearing and comply with the outcome of that hearing.

**IT IS SO ORDERED.**

Dated this 2nd day of January, 2026.

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE